Pedro Antonio MOLINO, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8804–CR–383.

Supreme Court of Indiana.

Dec. 5, 1989.

S. Sargent Visher, Choate Visher & Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction of appellant of Possession of Cocaine with Intent to Deliver, a Class A felony, for which he received a sentence of thirty (30) years. He also was convicted of Possession of Cocaine, for which he received a sentence of five (5) years, the sentences to run concurrently. Because possession of cocaine is an included offense in the charge of possession with intent to deliver, this cause will be remanded to the trial court with instructions to expunge the conviction for possession of cocaine.

The facts are: In April of 1987, a multi-agency task force comprised of federal, state, and local officials was conducting a drug investigation at the Indianapolis International Airport. The officers gave particular attention to Florida Express, flight 505, because of its frequent use by drug couriers. They observed the deplaning passengers for individuals who fit the "drug courier profile."

On April 27 at approximately 11:00 a.m., appellant caught the attention of the officers as he quickly exited from the Florida flight. He exited the concourse at a fast pace, carrying a leather handbag. After visiting the restroom, he quickly exited the airport and hailed a cab. He did not stop to claim luggage.

Officers Jarvis, Kelly, and Flowers followed appellant outside to the cab. Officer Jarvis, who was in plain clothes, presented his badge and identification card to appellant and explained that he was conducting a narcotics investigation and asked appellant if he could ask him a few questions. He did not touch appellant or display any weapons. Appellant consented to the interview.

Officer Jarvis then asked for appellant's identification, which was provided. Appellant produced a Florida driver's license and a Florida Express airline ticket from his handbag. The identification and the ticket were returned to appellant, who placed them in his bag. Appellant claimed he was a clothing buyer who came to Indianapolis to purchase clothing. Officer Jarvis then asked appellant if he could look inside the handbag. Appellant nodded, then gave the bag to Detective Kelly who had approached. Kelly examined the contents of the bag and found numerous receipts, business documents, and business cards that were written in English. He also observed a passport that identified appellant as a citizen of Colombia.

The officers noted that appellant had become very nervous. The officers then asked appellant for his permission to be searched. Appellant then stated, "I have drugs," whereupon the officers asked him to come with them to their office.

Upon arrival at the office, the officers gave appellant his Miranda warnings. He then was given the written Miranda warnings in English. He stated that he had trouble reading English even though he could speak the language. Officer Jarvis then provided appellant with a Miranda warning form printed in Spanish. After being given time to read the warning, he was asked if he understood his rights, to which he responded, "Yes." However, he refused to sign the document.

Without any further questioning, he immediately stood up and removed from his clothing six packages of a powder later determined to be approximately 2.2 pounds of cocaine which was ninety percent pure. The officers testified that this was an unusual percentage of purity for a courier to be carrying. They estimated the value of the cocaine to be between $300,000 and $350,000.

Appellant then asked the officers if any of them spoke Spanish, and when they replied in the negative, he asked if he could speak to someone who was fluent in Spanish. The officers made such arrangements and after a conversation with the Spanish-speaking person, she told the officers, "He understands his rights but he does not want to talk to you." At that time, all questioning of appellant was terminated.

Appellant claims the trial court erred in overruling his motion to suppress and his objection to the introduction of the incriminating evidence on the ground that it was the fruit of an illegal search and seizure. Appellant takes the position that the State failed to produce evidence that the officers had any probable cause to suspect him of any wrongdoing and that their stopping of him and questioning him was purely arbitrary. He cites *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, to support his position that even if the stop in the airport was not an arrest, he nevertheless is entitled to Fourth Amendment protection.

In *United States v. Mendenhall* (1980), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497, agents of the Drug Enforcement Administration observed the defendant disembark from a commercial airline flight from Los Angeles. After observing the defendant's behavior, which fit the "drug courier profile," the agents approached her as she was walking through the concourse. The agents in plain clothes identified themselves as federal agents and asked to see her identification and airline ticket. The defendant complied and became extremely nervous. After returning the requested items to her, one of the agents asked her if she would accompany him to his office for further questioning. At the office, appellant consented to be searched and handed two small packages of heroin from her undergarments to a policewoman.

The Supreme Court reversed the Court of Appeals which found that the defendant had not validly consented to the search. The Court pointed out that the purpose of the Fourth Amendment is not to eliminate all contact between police and the citizenry but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *Id.* at 553–54, 100 S.Ct. at 1877, 64 L.Ed.2d at 509.

The Court stated that as long as the person being questioned remains free to walk away, there has been no intrusion upon the person's liberty or privacy that would require particularized justification.

The Court pointed out the need for police questioning as an effective tool in the enforcement of criminal laws and noted that without such investigation the security of all would be diminished. The case at bar is almost an exact parallel with *Mendenhall.*

In *Florida v. Royer* (1983), 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229, in a very similar case, the Court upheld the reversal of a conviction. However, in that case, the officers held the defendant in an office while they retrieved his luggage and opened it. The Court noted that under the circumstances the defendant was not free to leave and that as a practical matter he had been placed under arrest before probable cause developed. Such is not the situation in the case at bar.

In *Florida v. Rodriguez* (1984), 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165, the defendant drew the attention of police officers in much the same manner as in the case at bar. There the defendant voluntarily handed his luggage to the officers, who discovered cocaine inside. The Supreme Court reversed the Florida Court of Appeal which had upheld the trial court's suppression of the evidence on the grounds that police did not have an "articulable suspicion" to justify the initial stop.

The Supreme Court cited *Mendenhall* and *Royer* and stated that the initial contact between the officers and the defendant where the person is simply asked if he will step aside and talk with them was "clearly the sort of consensual encounter that implicates no Fourth Amendment interest." *Id.* 469 U.S. at 5–6, 105 S.Ct. at 311, 83 L.Ed.2d at 171. The Court went on to hold in the alternative that even if a "seizure" had occurred for Fourth Amendment purposes, it was in fact justified on the basis of an articulable suspicion. *Id.* This "reasonable suspicion" standard, taking into account the totality of the circumstances, has recently been reaffirmed in a "drug courier profile" context. *United States v. Sokolow* (1989), —— U.S. ——, 109 S.Ct. 1581, 104 L.Ed.2d 1.

In the case at bar, the officers meticulously followed the format set forth in *Mendenhall* and *Rodriguez* and avoided

the situation set forth in *Royer.* The police officers were merely in a "stop and frisk" situation at the time appellant volunteered the information that he was carrying drugs. At that moment, the officers stopped any further inquiry, took appellant to the office, and immediately administered the *Miranda* warnings in both English and Spanish. After being given such warnings, but before any interrogation could be had, appellant stood up and voluntarily removed packages of cocaine from various places on his person. After he had made such a disclosure, he stated he did not wish to talk with the officers further, and he was not subjected to any further questioning. The trial court did not err in refusing to suppress the evidence or in overruling appellant's objection thereto.

Based upon his premise that the evidence against him was illegally seized, appellant claims there is insufficient evidence to support his conviction. However, he does concede that should the court hold the evidence to be admissible, it is in fact sufficient to support his conviction.

■ As stated at the outset of this opinion, appellant was convicted of both possession of cocaine with intent to deliver and possession of cocaine. Possession is an included offense under the charge of possession with intent to deliver. *Mason v. State* (1989), Ind., 532 N.E.2d 1169. This cause therefore is remanded to the trial court with instructions to set aside appellant's conviction and sentence for possession of cocaine. In all other respects, the trial court is affirmed.

SHEPARD, C.J., and PIVARNIK, J., concur.

DeBRULER and DICKSON, JJ., dissent with separate opinions.

DeBRULER, Justice, dissenting.

In this case, three plainclothes officers working together at the airport saw a Hispanic passenger carrying a handbag deplane a flight from Miami and walk rapidly to a restroom. He came out in a few minutes and walked rapidly to an exit and to a taxi stand. He did not claim any baggage. As he was about to enter a taxi, the three officers approached him, the lead officer identifying himself as a police officer.

At the time of this initial contact, the officer stated that he was conducting a drug investigation and asked appellant if he had been on the Florida flight. Receiving an affirmative answer, the officer then asked for some identification. Appellant handed him his Florida driver's license and a ticket for a return flight to Miami leaving the next day. The license had appellant's photograph on it. There was nothing suspicious about either item. The officer then asked appellant if he had business in Indianapolis, and appellant said that he was a clothing buyer. There was nothing remarkable about this response.

In the next immediately following series of events, the officer asked appellant for permission to look in the handbag he was carrying. Appellant shook his head, said yes, and handed the bag to one of the other officers who was standing a few feet away. As this officer was going through the bag, appellant became visibly nervous and stood in such a manner as to show them only one of his sides. The search of the bag revealed only some papers. The officer searching the bag found appellant's Colombian passport; however, the officer in charge who conducted all of the questioning was not made aware of the presence in the bag of the Colombian passport until after appellant was inside the airport and in custody.

In the next immediately following series of events, the officer asked appellant for permission to make a search of his person. Appellant then looked at the officer and said, "I have drugs." The officer in charge then asked appellant to accompany them to an office in the airport, and responding in the affirmative, appellant walked along with the three officers to the office.

In the next immediately following series of events, the officer provided appellant with a copy of the *Miranda* rights in Spanish, and appellant refused to sign a waiver of those rights. He then stood up and took the contraband cocaine from his clothing

and handed it to the officers without being touched or searched.

In this situation, appellant's statement "I have drugs" and the drugs themselves are the inadmissible product of an unlawful intrusion when that intrusion is measured by the Fourth Amendment. The best judgment of airport search cases is that, at points other than border crossings, stopping a person in an airport and requesting permission to search that person's luggage or to make a personal search constitutes a "seizure" of the person for the purposes of the Fourth Amendment and must be justified by a reasonable and articulable suspicion of criminal activity. *United States v. Sokolow*, —— U.S. ——, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Florida v. Rodriguez*, 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984). Here, appellant walked rapidly from a plane from Miami, admittedly a location from which one might suspect drugs to arrive. Many busy people walk rapidly through airports. He did not, however, look around nervously as though to detect surveillance. He did not pick up baggage which had been checked. Many innocent people do not do so. When stopped, he, unlike those in some of the important airport cases, *see, e.g., United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), produced his own Florida driver's license and consistent flight ticket. His explanation of his travel provided no basis for suspicion. At this point, the commands of the Fourth Amendment required that the questioning and pressing of appellant be stopped. Appellant's admission of having drugs and his production of those drugs are the tainted product of the unlawful continuance of that questioning and should have been suppressed.

DICKSON, Justice, dissenting.

I agree in part with Justice DeBruler's view that the officers did not have reasonable suspicion that the appellant was engaged in wrongdoing when they asked him for permission to search his luggage and his person, and would further find that a Fourth Amendment "seizure" occurred at the initial police intrusion.

However, this conclusion does not necessarily result from the cases cited by Justice DeBruler. In *United States v. Sokolow* (1989), —— U.S. ——, ——, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10, the Court, noting the absence of government challenge on this issue, expressly assumed "without deciding" that an airport encounter amounted to a Fourth Amendment stop. Likewise, in *Florida v. Rodriguez* (1984), 469 U.S. 1, 6, 105 S.Ct. 308, 311, 83 L.Ed.2d 165, 171, the Court assumed "without deciding" that compliance with police requests to move and granting permission to search baggage constituted such a seizure.

Unlike *Sokolow* and *Rodriguez*, the State here vigorously contends not only that the investigatory stop was justified by a reasonable suspicion, but also that a Fourth Amendment "seizure" had not occurred in the present case.

Citing *United States v. Mendenhall* (1980), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497, the majority asserts that particularized justification is not required for the police to stop and question citizens, as long as the person being questioned remains free to walk away. However, this view was joined by only two justices in *Mendenhall*. Three others declined to join as to this issue but agreed with the majority opinion that reasonable suspicion justified the intrusion. Four justices dissented, arguing that the stop and questioning amounted to an unreasonable seizure.

Because these cited authorities are thus inconclusive as to whether an initial stop and questioning by police constitute a seizure, I seek guidance by reference to *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. In *Terry*, the United States Supreme Court instructed:

Our first task is to establish at what point in this encounter the Fourth Amendment becomes relevant.... There is some suggestion in the use of such terms as "stop" and "frisk" that such police conduct is outside the purview of the Fourth Amendment because neither action rises to the level of a "search" or "seizure" within the mean-

ing of the Constitution. We emphatically reject this notion. It is quite plain that the Fourth Amendment governs "seizures" of the person which do not eventuate in a trip to the station house and prosecution for crime—"arrests" in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person.

*Id.* at 16, 88 S.Ct. at 1877, 20 L.Ed.2d at 903. In apparent contrast, however, the *Terry* Court commented by way of footnote:

Obviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.

*Id.* at 19 n. 16, 88 S.Ct. at 1879 n. 16, 20 L.Ed.2d at 905 n. 16.

In the present case, three non-uniformed police officers followed Molino to a taxicab, at which point one of the officers identified himself by displaying his police badge, informed Molino that he was conducting a narcotics investigation, and asked Molino for identification. This encounter cannot be classified as mere "personal intercourse between policemen and citizens." Rather, an officer, displaying his badge as a show of authority, restrained Molino's departure from the airport, thereby effecting a "seizure" under *Terry*. Of course, this would have been a permissible seizure if the officers' prior observations had led them to a reasonable suspicion that criminal activity was occurring. *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880–81, 20 L.Ed.2d at 906.

I cannot find Molino's arrival from Miami, his Hispanic appearance, his brisk pace through the airport, and his use of a single carry-on bag without claiming any checked baggage to constitute a sufficient basis for reasonable suspicion of ongoing criminal activity. Because of the absence of adequate reasonable suspicion, I would find the initial intrusion and questioning to be an unreasonable seizure prohibited by the Fourth Amendment.