Steven KNOWLES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9101–CR–24 [1].

Court of Appeals of Indiana, Fifth District.

May 29, 1991.

---

1. This case has been diverted to this office by order of the Chief Judge.

Walter E. Bravard, Jr., Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen. and Gary Damon Secrest, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

BARTEAU, Judge.

Steven Knowles appeals his conviction, following trial by jury, of dealing in cocaine in excess of three (3) grams, a class A felony.[2] We have restated the issues raised as follows:

 (1) Whether the discovery of the cocaine was the result of an impermissible search and seizure?

 (2) Whether there was sufficient evidence of Knowles' intent to deal to support the conviction.

2. I.C. 35–48–4–1.

## FACTS

Special agent Lawrence Lillig, of the Indianapolis office of the Federal Drug Enforcement Administration, received a telephone call from Robert Johnson, also a DEA agent. Johnson called from the Atlanta airport and informed Lillig that while observing passengers arriving on flights from drug source areas he noticed one particular passenger, with a black carry-on bag and wearing a grey sweatsuit, acting in a manner he considered suspicious. After following the passenger and watching him board a flight to Indianapolis, agent Johnson discovered the passenger's name was Steven Knowles, that he had purchased a one way ticket from Fort Lauderdale to Indianapolis, via Atlanta, and that he had paid cash for the ticket. He also determined that the telephone number Johnson gave the airline was for a cellular phone and that only a recording answered when the number was dialed.

Lillig relayed the information provided by agent Johnson to a drug task force at the Indianapolis airport and then proceeded there himself. He and other members of the task force observed Knowles deplane, look around briefly, and begin walking through the concourse at a very fast pace. Knowles went directly to a taxicab stand. At that time, he was approached by three members of the task force who identified themselves as police officers and asked permission to talk with him. Knowles was cooperative and provided the officers with a Florida driver's license and his plane ticket, both of which were in his name. The officers asked Knowles for permission to have a drug detection dog sniff his carry-on bag and he agreed. The dog's reaction to the bag indicated the presence of drugs. After the agents read Knowles his rights, he signed a waiver of rights and consent to search form. The bag contained 140 grams of 98% pure cocaine. Other facts will be provided as necessary.

## STOP, SEARCH & SEIZURE

Knowles asserts that the cocaine should have been suppressed as its discovery was

the direct result of an impermissible stop and seizure. Specifically, he contends that a stop based solely on the determination that someone matches a "drug courier profile" is impermissible and that any evidence discovered as a result of such a stop should be suppressed. Further, he urges that once he was detained in this manner, he was effectively in custody because he was not informed that he was free to leave.

We decide this issue against Knowles based on a recent Indiana Supreme Court case wherein, by a 3–2 vote, that court approved the use of evidence obtained in a similar fashion. In *Molino v. State* (1989), Ind., 546 N.E.2d 1216, the suspect, Molino, quickly deplaned from a Florida flight and left the concourse at a fast pace while carrying a leather handbag. After a stop in the restroom, Molino exited the airport and hailed a cab, without stopping to claim any luggage. Three police officers approached Molino and after identifying themselves and explaining they were conducting a narcotics investigation, asked appellant if they could ask him a few questions. Molino consented and, upon request, produced a Florida driver's license and an airline ticket. Both items were returned. A request to look inside Molino's handbag was granted and the officer found numerous business receipts and observed a passport identifying Molino as a Columbian citizen. Molino became increasingly nervous and the officers requested his consent to a search. At that time he stated "I have drugs" whereupon the officers requested he accompany them to their office. In the office, the officers advised Molino of his *Miranda* rights, in both English and Spanish. He acknowledged he understood his rights but refused to sign the acknowledgment form. Without further questioning, Molino stood up and removed six packages of cocaine from his clothing.

Our supreme court held that the "police officers were merely in a 'stop and frisk' situation at the time appellant volunteered drugs" and that the evidence should not have been suppressed. *Molino, supra* at 1219. In support of its decision, the court relied heavily on the similarity in facts between the case before it and two United States Supreme Court cases, *United States v. Mendenhall* (1980), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 and *Florida v. Rodriguez* (1984), 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165. In *Mendenhall*, a woman matching a drug courier profile was approached by authorities and asked for identification. After returning her identification, the authorities asked her to accompany them to their office for further questioning. Once in the office, she consented to a search and produced two small packages of heroin from her clothes. *Mendenhall* provided that "[a] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." 446 U.S. at 554, 100 S.Ct. at 1877. The *Molino* majority cited *Mendenhall* as authority that "as long as the person being questioned remains free to walk away, there has been no intrusion upon the person's liberty or privacy that would require particularized justification." [3] *Molino*, 546 N.E.2d 1216, 1218. In *Rodriguez*, the defendant voluntarily handed his luggage to officers questioning him following a similar stop. This case was cited by the *Molino* majority for the proposition that "the initial contact between the officers and the defendant where the person is simply asked if he will step aside and talk with them was 'clearly the sort of consensual encounter that impli-

**3.** As pointed out by Justice Dickson's dissent in *Molino,* a majority of the *Mendenhall* court did not make such a determination. The excerpted phrase from *Mendenhall* appeared in Justice Stewart's plurality opinion, joined only by Justice Rehnquist. Justice Powell, Justice Burger and Justice Blackmun concurred in result but assumed that a seizure, adequately supported by reasonable suspicion, had occurred. Four dissenting Justices believed there had been a seizure unsupported by reasonable suspicion. The "free to leave" standard first addressed in *Mendenhall* was later adopted by a majority of the Supreme Court. *See, Florida v. Royer* (1983), 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229; *I.N.S. v. Delgado* (1984), 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247.

cates no Fourth Amendment interest.' " [4] *Molino,* 546 N.E.2d 1216, 1218 (quoting *Rodriguez,* 469 U.S. at 5–6, 105 S.Ct. at 311, 83 L.Ed.2d at 171).

The *Molino* court apparently determined that the action of the police officers did not amount to a Fourth Amendment seizure because Molino was free to walk away at any time, the standard first developed in *Mendenhall.* The United States Supreme Court recently addressed this standard and stated in part that *"Mendenhall* establishes that the test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *California v. Hodari D.* (1991), — U.S. ——, 111 S.Ct. 1547, 113 L.Ed.2d 690.

■ The factual similarity between *Molino* and the case before us constrains us to conclude that Knowles was free to leave at any time and thus no seizure of his person occurred.[5] The evidence presented showed that Knowles was cooperative, voluntarily accompanied the authorities to their office, and consented to examination of his carry-on bag by the drug detection dog. While the officers did not inform Knowles that he was free to walk away, they also did nothing to give the impression he was compelled to submit to their authority. Based on the precedent established in *Molino,* the admission of the cocaine was not error.

## INTENT TO DELIVER

Knowles asserts that his conviction for dealing in cocaine was not supported by sufficient evidence of his "intent to deliv-

er." His argument is primarily based on the premise that all incriminating evidence was the result of an illegal search and seizure and therefore should have been suppressed. We have deemed the evidence properly admitted and therefore this argument must fail.

■ After Knowles' arrest, he cooperated with the authorities by contacting the intended recipient of the cocaine and arranging to meet with him in a nearby hotel room. The buyer arrived at the room, but the transaction was apparently not completed. Knowles argues that this indicates there was insufficient evidence of his intent to deliver. This argument must also fail. A conviction for possession with intent to deliver may be sustained upon circumstantial evidence. *Valle v. State* (1990), Ind., 550 N.E.2d 746. Possession of a large quantity of cocaine is circumstantial evidence of intent to deal. *Enamorado v. State* (1989), Ind., 534 N.E.2d 740. Knowles possessed 140 grams of 98% pure cocaine. From this evidence, the jury could properly infer Knowles had the requisite intent to deliver. *Id.*

AFFIRMED.

BAKER, J., concurs in result with separate opinion.

SHARPNACK, J., concurs in result.

BAKER, Judge, concurring.

While I concur in the result reached by the majority, I see no reason to engage in a critique of the decision reached by our supreme court in *Molino v. State* (1989), Ind., 546 N.E.2d 1216, as contained in the majority's footnotes numbered 3 and 5. As an intermediate appellate court, we are bound by the pronouncements of our supreme

---

4. *Rodriguez* also avoided the seizure issue by "assuming without deciding" that a seizure occurred at the time the suspect was initially stopped.

5. We follow *Molino* because it is the controlling precedent in this case. However, we find more persuasive the position of Justice Dickson in dissent in *Molino,* arguing that when three law enforcement officers follow someone to a taxicab, display a badge, announce they are conducting a narcotics investigation and request

production of identification, the "encounter cannot be classified as mere 'personal intercourse between policemen and citizens.' Rather, an officer, displaying his badge as a show of authority, restrained Molino's departure from the airport, thereby effecting a 'seizure' under *Terry.* Of course, this would have been a permissible seizure if the officers' prior observations had led them to a reasonable suspicion that criminal activity was occurring. *Terry* [*v. Ohio* ] 392 U.S. [1] at 22, 88 S.Ct. [1868] at 1880–81, 20 L.Ed.2d [889] at 906 [ (1968) ]." *Molino,* supra at 1221.

court, regardless of our view of their propriety.