**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 22 2013, 5:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BARBARA J. SIMMONS**
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MARJORIE LAWYER-SMITH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TONY KIMBLE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1303-CR-268 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven J. Rubick, Magistrate
Cause No. 49F19-1209-CM-67847

**October 22, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

On September 29, 2012, while working as an off-duty police officer at the Keystone North Apartments, Marion County Sheriff's Deputy James Ellis observed Appellant-Defendant Tony Kimble entering the driver's seat of a parked vehicle after displaying signs of intoxication. Believing that Kimble was intoxicated, Deputy Ellis approached the vehicle and asked Kimble for identification. While reviewing Kimble's identification, Deputy Ellis saw Kimble reach into his left front pocket. Kimble did not remove his hand from his pocket when Deputy Ellis requested that he do so. In light of Kimble's failure to comply with his request and out of concerns for officer safety, Deputy Ellis asked Kimble to exit the vehicle. When Kimble opened the door to the vehicle, Deputy Ellis saw two small bags containing marijuana in plain view on the floorboard of the driver's area of the vehicle.

Kimble was subsequently charged with one count of Class A misdemeanor possession of marijuana. At trial, Kimble moved to suppress all evidence recovered during the course of his encounter with Deputy Ellis. This motion was denied. Kimble did not, however, make a separate objection to the admission of the marijuana. Following a bench trial, Kimble was found guilty of Class A misdemeanor possession of marijuana and sentenced to time served. On appeal, Kimble contends that the trial court abused its discretion in denying his motion to suppress. We affirm.

## FACTS AND PROCEDURAL HISTORY

On September 29, 2012, Deputy Ellis was working security at the Keystone North

2

Apartments[1] ("apartment complex"). The apartment complex is government housing. There are signs posted throughout the apartment complex that indicate that any resident or visitor to the apartment complex must carry proper government identification at all times.

While completing a routine foot patrol of the apartment complex, Deputy Ellis observed Kimble exit an apartment and approach a parked vehicle. Deputy Ellis observed that Kimble displayed poor balance, swayed from side to side, and almost fell over several times. Deputy Ellis's training and experience led him to believe that Kimble was "possibly in the state of intoxication." Tr. p. 8.

Deputy Ellis approached Kimble after Kimble entered the driver's seat of the parked vehicle. Deputy Ellis asked Kimble for identification. Kimble complied with Deputy Ellis's request. While Deputy Ellis was reviewing Kimble's identification, Deputy Ellis saw Kimble reach into his left front pocket. Deputy Ellis asked Kimble to remove his hand from his pocket. Kimble, however, did not comply with Deputy Ellis's request and continued "fumbling around" in his pocket. Tr. p. 11. Citing concerns for officer safety, Deputy Ellis then asked Kimble to exit the vehicle. When Kimble opened the door to the vehicle, Deputy Ellis saw two small bags of a green leafy substance in plain view on the floorboard of the driver's area of the vehicle. Though his training and experience, Deputy Ellis knew that the green leafy substance was marijuana. Combined, the two bags contained 2.62 grams of marijuana.

Kimble was subsequently charged with one count of Class A misdemeanor possession

---

[1] The Keystone North Apartments are also known as the Phoenix Apartments.

of marijuana. On February 25, 2013, the trial court conducted a bench trial during which Kimble moved to suppress all evidence recovered during the course of his encounter with Deputy Ellis. Specifically, Kimble argued that his encounter with Deputy Ellis violated his constitutional rights because Deputy Ellis did not have any reason to stop him. The trial court denied Kimble's motion to suppress. Kimble did not make a separate objection to the admission of the marijuana. Following trial, the trial court found Kimble guilty of Class A misdemeanor possession of marijuana and sentenced him to time served.

## DISCUSSION AND DECISION

Kimble contends that the trial court erred in denying his motion to suppress the evidence obtained during his encounter with Deputy Ellis. Although Kimble originally challenged the admission of the evidence through a motion to suppress, he appeals following a completed trial and thus challenges the admission of the evidence at trial. "Accordingly, 'the issue is more appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial.'" *Cole v. State*, 878 N.E.2d 882, 885 (Ind. Ct. App. 2007) (quoting *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003)).

> Our standard of review for rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by an objection at trial. *Ackerman v. State*, 774 N.E.2d 970, 974-75 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*. We also consider uncontroverted evidence in the defendant's favor. *Id*.

*Id*.

A trial court has broad discretion in ruling on the admissibility of evidence. *Washington*, 784 N.E.2d at 587 (citing *Bradshaw v. State*, 759 N.E.2d 271, 273 (Ind. Ct. App. 2001)). Accordingly, we will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. *Id.* (citing *Bradshaw*, 759 N.E.2d at 273). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* (citing *Huffines v. State*, 739 N.E.2d 1093, 1095 (Ind. Ct. App. 2000)). In the instant matter, Kimble argues that the trial court abused its discretion in admitting the marijuana discovered during his encounter with Deputy Ellis because the marijuana was discovered in violation of his constitutional rights under both the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution.

## A. Waiver

As an initial matter, we note that while Kimble moved to suppress all evidence discovered during his encounter with Deputy Ellis, Kimble did not make a contemporaneous objection to the admission of the marijuana at trial. Failure to make a contemporaneous objection to the admission of evidence at trial generally results in waiver of the error upon appeal. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010); *Lewis v. State*, 755 N.E.2d 1116, 1122 (Ind. Ct. App. 2001). However, waiver notwithstanding, we will address the merits of Kimble's claims.

## B. The Fourth Amendment

Kimble argues that the trial court abused its discretion in admitting the marijuana

5

found in his vehicle during his encounter with Deputy Ellis into evidence because Deputy

Ellis lacked the reasonable suspicion that a crime had occurred or was about to occur when

he initiated the warrantless stop during which the marijuana was discovered.

> The Fourth Amendment to the United States Constitution provides all citizens with "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ...." U.S. CONST. amend. IV; *see also Black v. State*, 810 N.E.2d 713, 715 (Ind. 2004). The Fourth Amendment's protection against unreasonable search and seizure has been extended to the states through the Fourteenth Amendment. *See Berry v. State*, 704 N.E.2d 462, 464-65 (Ind. 1998). The protection against unreasonable seizures includes seizure of the person. *California v. Hodari D.*, 499 U.S. 621, 624, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (citation omitted). However, not all police-citizen encounters implicate the Fourth Amendment. *See, e.g.*, *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude a 'seizure' has occurred."); *see also Molino v. State*, 546 N.E.2d 1216, 1218 (Ind. 1989). A seizure does not occur, for example, simply because a police officer approaches a person, asks questions, or requests identification. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *see also Sellmer v. State*, 842 N.E.2d 358, 360 (Ind. 2006) (recognizing that a person is not seized within the meaning of the Fourth Amendment when police officers merely approach an individual and ask if the individual is willing to answer questions).
>
> Instead, a person is seized for Fourth Amendment purposes when, considering all the surrounding circumstances, the police conduct "would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion); *see also INS v. Delgado*, 466 U.S. 210, 216-17, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) ("Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment.").
>
> Applying a version of the U.S. Supreme Court's test, this Court has determined that not "every street encounter between a citizen and the police" is a seizure. *Overstreet v. State*, 724 N.E.2d 661, 664 (Ind. Ct. App. 2000*), reh'g denied, trans. denied*.... Similarly, a number of other jurisdictions have held that there is no "seizure of persons" when an officer walks up to a person

6

seated in a parked vehicle in a public place and asks a question of that person. *See, e.g.*, *State v. Carlson*, 762 N.E.2d 121, 128 (Ind. Ct. App. 2002) (citing *Latta v. Keryte*, 118 F.3d 693, 699 (10th Cir. 1997) (holding that no seizure occurred where police officer approached parked vehicle and asked defendant to get out, but instead the defendant drove off); *United States v. Kim*, 25 F.3d 1426, 1430-31 (9th Cir. 1994) (holding that there was no *Terry* stop where police officers came upon an already parked vehicle even though police car "partially blocked" the parked car), *cert. denied*, 513 U.S. 1030, 115 S.Ct. 607, 130 L.Ed.2d 517 (1994); *People v. Long*, 99 Ill.2d 219, 75 Ill. Dec. 693, 457 N.E.2d 1252, 1257 (1983) (holding that no seizure occurred where a police officer approached a parked vehicle and asked defendant a few questions); *State v. Marks*, 226 Kan. 704, 602 P.2d 1344, 1349 (1979) (holding that no seizure occurred where officer, responding to a police dispatch, approached parked vehicle and put questions to occupants); *People v. Taylor*, 454 Mich. 580, 564 N.W.2d 24, 28 (1997) (holding that officer made no seizure by merely approaching the vehicle in a public place and asking defendants if they were willing to answer some questions), *overruled on other grounds by People v. Kazmierczak*, 461 Mich. 411, 605 N.W.2d 667, 674-75 (2000); and *State v. Glaesman*, 545 N.W.2d 178, 182 (N.D. 1996) (holding that there was no seizure where police officer walked up to a parked pickup truck and then, when the driver opened door, police officer smelled alcohol)).

An encounter that begins as consensual might become a seizure, however, when a police officer orders a suspect to "freeze" or get out of the vehicle. See 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 9.4(a), at 434 (2004). The Fourth Amendment may also be implicated when police engage in activity, which one "would not expect if the encounter was between two private citizens—boxing the car in, approaching it on all sides by many officers, pointing a gun at the suspect and ordering him to place his hands on the steering wheel, or use of flashing lights as a show of authority." *Id*. at 434-35.

*Bentley v. State*, 846 N.E.2d 300, 305-06 (Ind. Ct. App. 2006).

Here, the encounter between Deputy Ellis and Kimble began as a consensual encounter. The record reveals that Deputy Ellis observed Kimble enter the driver's seat of a vehicle after displaying signs of intoxication. Deputy Ellis approached Kimble and asked Kimble for identification. This request did not convert the encounter into an investigatory

7

stop. *See id*. at 306 (citing *Bostick*, 501 U.S. 429 at 434).

The evidence further demonstrates that after complying with Deputy Ellis's request for identification, Kimble placed his hand in his left front pocket. When Deputy Ellis noticed that Kimble had put his hand in his pocket, Deputy Ellis asked Kimble to remove his hand from his pocket. This too was insufficient to convert the encounter into an investigatory stop requiring reasonable suspicion under Fourth Amendment jurisprudence. *See id*. at 307 (providing that an officer's request that a passenger put his hands upon the seat was insufficient to convert the encounter into an investigatory stop requiring reasonable suspicion). The record does not indicate, for instance, that Deputy Ellis drew his weapon, spoke in an intimidating fashion, or otherwise restricted Kimble from leaving the area. *See id*. Rather, the request for Kimble to remove his hand from his pocket was largely to ensure officer safety. That said, the consensual encounter escalated into a seizure for purposes of the Fourth Amendment when Deputy Ellis asked Kimble to exit the vehicle. *See id*.

> The protection of the Fourth Amendment does "not ... guarantee against all ... seizures, but only against unreasonable ... seizures." *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). In [*Terry*, 392 U.S. 1, 88 S.Ct. 1868], the Court established the rule that a police officer may, without a warrant or probable cause, briefly detain a person for either investigatory purposes or a protective search ("frisk")—which permits an officer, in the course of an investigative detention, to conduct a limited search for weapons for his or her own protection—if, based upon specific and articulable facts together with rational inferences from those facts, "official intrusion upon the constitutionally protected interests" of private citizens is reasonably warranted, and the officer has a reasonable suspicion that criminal activity "may be afoot." *Id*. at 21-22, 30, 88 S.Ct. 1868.

*Id*.

The Supreme Court has recognized that "[t]he concept of reasonable

8

suspicion, like probable cause, is not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (citations omitted). Rather, in evaluating the legality of a *Terry* stop, we must consider "the totality of the circumstances— the whole picture." *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Therefore, the reasonable-suspicion inquiry is fact-sensitive and must be determined on a case-by-case basis. *Lampkins v. State*, 682 N.E.2d 1268, 1271 (Ind. 1997), *modified on reh'g on other grounds*, 685 N.E.2d 698. The reasonable suspicion requirement is satisfied where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Lyons v. State*, 735 N.E.2d 1179, 1183-1184 (Ind. Ct. App. 2000), *trans. denied*; *see also Gipson v. State*, 459 N.E.2d 366, 368 (Ind. 1984). Thus, reasonable suspicion entails something more than an inchoate and unparticularized suspicion or hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence. *Luster v. State*, 578 N.E.2d 740, 743 (Ind. Ct. App. 1991). We review a trial court's determination regarding reasonable suspicion de novo. *Burkett v. State*, 736 N.E.2d 304, 306 (Ind. Ct. App. 2000).

*Id*.

In the present case, Kimble claims that Deputy Ellis did not have reasonable suspicion that criminal activity had occurred or was about to occur when he requested that Kimble exit the vehicle, thereby initiating the stop. We disagree. Deputy Ellis observed Kimble display signs of intoxication as Kimble approached the driver's seat of the vehicle. Specifically, Deputy Ellis observed that Kimble's "balance was off," that he almost fell over several times, and that he was "swaying back and forth from side to side." Tr. pp. 7, 8. Deputy Ellis's training and experience lead him to believe that these behaviors indicated that Kimble was intoxicated and this belief, coupled with the fact that Kimble entered the driver's seat of a vehicle and appeared to be preparing to operate said vehicle, was sufficient to create a reasonable suspicion that criminal activity, *i.e.* operating a vehicle while intoxicated, was

9

about to occur.

Under the circumstances, we conclude that although the encounter between Deputy Ellis and Kimble was initially a consensual encounter that did not require reasonable suspicion under Fourth Amendment jurisprudence, the search transformed into a stop when Deputy Ellis requested that Kimble exit the vehicle. However, because Deputy Ellis reasonably believed that criminal activity was about to occur and that it was necessary for Kimble to exit the vehicle due to officer safety concerns, we conclude that Kimble's rights under the Fourth Amendment were not violated.

Further, we note that the marijuana was not discovered during an intrusive search of Kimble's person or vehicle but rather was in plain view when Kimble opened the door to the vehicle in an effort to comply with Deputy Ellis's request that he exit the vehicle. When Kimble opened the door to the vehicle, Deputy Ellis observed two small bags containing a green leafy substance sitting on the floorboard of the driver's area in the vehicle. Deputy Ellis testified that "through [his] training and experience" he knew that the green leafy substance was marijuana. Tr. p. 11. Combined, the two bags contained 2.62 grams of marijuana. (Tr. 20)

### B. Article I, Section 11

Kimble also argues that his encounter with Deputy Ellis violated his rights under Article I, Section 11.

> Article I, Section 11 provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated...." The purpose of this article is to protect from unreasonable police activity those areas of life that Hoosiers regard as private.

10

> *Moran v. State*, 644 N.E.2d 536, 540 (Ind. 1994). The provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure. *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995).

*State v. Quirk*, 842 N.E.2d 334, 339-40 (Ind. 2006).

> "While almost identical to the wording in the search and seizure clause of the federal constitution, Indiana's search and seizure clause is independently interpreted and applied." *Baniaga v. State*, 891 N.E.2d 615, 618 (Ind. Ct. App. 2008). Under the Indiana Constitution, the legality of a governmental search turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005).… The burden is on the State to show that under the totality of the circumstances, the intrusion was reasonable. *Id.*

*Hathaway v. State*, 906 N.E.2d 941, 945 (Ind. Ct. App. 2009).

For the reasons stated in our analysis relating to the Fourth Amendment, we conclude that Deputy Ellis's encounter with Kimble was reasonable under the totality of the circumstances. Again, Deputy Ellis observed that Kimble's "balance was off," that he almost fell over several times, and that he was "swaying back and forth from side to side." Tr. pp. 7, 8. Deputy Ellis's training and experience led him to believe that these behaviors indicated that Kimble was intoxicated. Deputy Ellis further observed Kimble enter the driver's seat of a vehicle. Under these circumstances, we conclude that it was reasonable for Deputy Ellis to approach Kimble to determine whether Kimble was intoxicated before Kimble drove away in the vehicle because of the increased risk that Kimble could have injured himself or an innocent bystander if he had been permitted to operate a vehicle in an intoxicated state. In addition, Deputy Ellis's concern for officer safety was reasonable in light Kimble's failure to comply with Deputy Ellis's request that he remove his hand from his front left pocket. It was

11

not unreasonable for Deputy Ellis to request that Kimble exit the vehicle under the totality of the circumstances. As such, we conclude that Kimble's rights under Article I, Section 11 were not violated.

Because Kimble's rights under the Fourth Amendment and Article I, Section 11 were not violated, the trial court acted within its discretion in admitting into evidence the marijuana recovered from Kimble's vehicle. Therefore, we affirm his conviction.

The judgment of the trial court is affirmed.

BAILEY, J., and MAY, J., concur.