Todd A. OVERSTREET, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 55A01–9904–CR–110.

Court of Appeals of Indiana.

Feb. 29, 2000.

Rehearing Denied May 12, 2000.

---

Stephen Gerald Gray, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Todd A. Overstreet appeals his conviction for Driving While Privileges Suspended, as a Class A misdemeanor. The sole issue presented for our review is whether the trial court erred when it denied Overstreet's motion to suppress.

We affirm.

### FACTS AND PROCEDURAL HISTORY

At approximately 5:55 a.m. on November 4, 1997, Lieutenant Melvin E. Paris of the Mooresville Police Department observed Overstreet looking into a mailbox and then closing the mailbox door. Overstreet then walked hurriedly toward a parked vehicle and drove away. Lieutenant Paris, who was familiar with newspaper carriers and their vehicles, did not recognize Overstreet or his vehicle. Overstreet drove a short distance before stopping at a Crystal Flash gas station. Lieu-

tenant Paris watched as Overstreet exited his car and began to pump air into one of his automobile tires with an air hose. Lieutenant Paris pulled his marked police vehicle into the gas station behind Overstreet's vehicle. The flashing lights were not activated on the police vehicle. Lieutenant Paris got out of his vehicle, walked up to Overstreet, asked Overstreet what he had been doing at the mailbox and also asked him for identification. Overstreet volunteered that his operator's license was suspended.

The State subsequently charged Overstreet with driving while privileges suspended, as a Class D felony. Overstreet filed a motion to suppress and alleged that his constitutional rights were violated as a result of the alleged stop and detention by Lieutenant Paris. Following a hearing, the trial court denied Overstreet's motion. A bench trial was held on November 20, 1998, during which Overstreet renewed his motion to suppress. After hearing evidence, the trial court entered judgment of conviction against Overstreet for driving while privileges suspended, as a Class D felony; however, the trial court subsequently reduced its judgment to a Class A misdemeanor. Overstreet appeals the denial of his motion to suppress.

## DISCUSSION AND DECISION

■ We review the denial of a motion to suppress in a manner similar to other sufficiency matters. *Taylor v. State*, 689 N.E.2d 699, 702 (Ind.1997). We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, we must also consider the uncontested evidence favorable to the defendant. *Fair v. State*, 627 N.E.2d 427, 434 (Ind.1993).

Overstreet contends that Lieutenant Paris' brief inquiry constituted an "investigatory stop" and, because Paris lacked reasonable suspicion that criminal activity "may be afoot," Overstreet was illegally seized within the meaning of the Fourth Amendment. Thus, Overstreet argues, all evidence obtained as a result of the illegal seizure should have been suppressed. We cannot agree.

■ We begin by noting that there are three levels of police investigation, two which implicate the Fourth Amendment and one which does not. First, the Fourth Amendment requires that an arrest or detention for more than a short period be justified by probable cause. *Woods v. State*, 547 N.E.2d 772, 778 (Ind.1989). Probable cause to arrest exists where the facts and circumstances within the knowledge of the officers are sufficient to warrant a belief by a person of reasonable caution that an offense has been committed and that the person to be arrested has committed it. *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Second, it is well-settled Fourth Amendment jurisprudence that police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Accordingly, limited investigatory stops and seizures on the street involving a brief question or two and a possible frisk for weapons can be justified by mere reasonable suspicion. *Woods*, 547 N.E.2d at 778. Finally, the third level of investigation occurs when a law enforcement officer makes a casual and brief inquiry of a citizen which involves neither an arrest nor a stop. In this type of "consensual encounter" no Fourth Amendment interest is implicated. *See Molino v. State*, 546 N.E.2d 1216, 1218 (Ind.1989) (citing *Florida v. Rodriguez*, 469 U.S. 1, 5–6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984)).

■ The relevant facts are undisputed. The record shows that Paris did not stop Overstreet's vehicle. Overstreet had al-

ready stopped his vehicle at a gas station. Neither did Paris stop Overstreet himself. When Paris approached him, Overstreet was using an air hose to pump air into one of his automobile tires. Overstreet was not detained. Paris did not restrict his movement in any way. Paris merely asked Overstreet about his actions at the mailbox and asked him for identification. Overstreet then volunteered that his operator's license was suspended.

■ We decline to hold that this brief encounter and inquiry constitutes a *Terry* stop which required a reasonable suspicion of criminal activity.[1] Not every encounter between a police officer and a citizen amounts to a seizure requiring objective justification. To characterize every street encounter between a citizen and the police as a seizure, while not enhancing any interest guaranteed by the Fourth Amendment, would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices. *See United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Indeed, it is not the purpose of the Fourth Amendment to eliminate all contact between police and the citizenry. *Id.* at 553, 100 S.Ct. 1870.

As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy to require some particularized and objective justification. *Id.* at 554, 100 S.Ct. 1870. Examples of circumstances under which a reasonable person would have believed he was not free to leave include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Id.* "In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Id.* at 555, 100 S.Ct. 1870. In this case, there was no such evidence presented. The trial court properly denied Overstreet's motion to suppress.

Affirmed.

BROOK, J., concurs.

ROBB, J., dissents with separate opinion.

ROBB, Judge, dissenting

I respectfully dissent from the majority's holding that the "brief encounter" between Paris and Overstreet did not constitute a *Terry* stop requiring reasonable suspicion of criminal activity. Op. at 663. The majority opines that because Paris did not stop Overstreet or his vehicle and did not detain Overstreet or restrict his movement in any way, this was a "casual and brief inquiry" which involves neither an arrest nor a stop and does not implicate the Fourth Amendment. I disagree.

First, I disagree with the majority's premise that "Paris did not stop Overstreet's vehicle." Op. at 663. The fact that Overstreet's vehicle was already stopped, by Overstreet's own volition, when Paris approached Overstreet does not necessarily mean that Paris did not "stop" the vehicle within the technical legal meaning of that term. We will never know whether Paris' interest in inquiring into Overstreet's activities would have led him to initiate a formal traffic stop had Overstreet not pulled into the gas station. The mere fact that he was not required to

1. Overstreet relies on two recent opinions of our court in which we reversed the trial court's denial of a motion to suppress because the police officers lacked "reasonable suspicion" to justify an investigatory stop. *See Webb v. State*, 714 N.E.2d 787 (Ind.Ct.App. 1999); *Stalling v. State*, 713 N.E.2d 922 (Ind. Ct.App.1999). However, unlike in the instant case, each of those cases clearly involved the "stop" of an individual. As we have stated, Overstreet was neither stopped nor seized within the meaning of the Fourth Amendment.

do so under the particular circumstances of this case should have no bearing on our determination. To the extent that the majority opinion relies on the lack of a "stop," I disagree.

It also seems to me that the "third level of investigation" to which the majority refers is merely a subterfuge in this case. to circumvent the requirement of reasonable suspicion when none exists. The case cited by the majority in support of this third level of investigation (and cases cited therein) deals with contact between police and an individual fitting a "drug courier profile." *See Molino v. State,* 546 N.E.2d 1216, 1217 (Ind.1989). In *Florida v. Rodriguez,* 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984), the Supreme Court held that contact between officers and an individual meeting a drug courier profile where the individual is merely asked if he will step aside and talk with them is a consensual encounter which does not implicate a Fourth Amendment interest. *Id.* at 5–6, 105 S.Ct. 308. However, the Supreme Court also stated in the alternative that even if a Fourth Amendment seizure had occurred, it was justified on the basis of an articulable suspicion. *Id.* Clearly, there is no articulable reasonable suspicion here: Overstreet was observed looking into his own mailbox at 6:00 a.m. and then "hurriedly" walking to his own car and driving to a nearby gas station to put air in his tires. The officer did not see Overstreet either put something into or take something out of the mailbox. He was "suspicious" because he did not know Overstreet and did not know what he was doing. R. 68. None of this amounts to reasonable suspicion of criminal activity.

Furthermore, I do not believe this to be a "consensual encounter" without Fourth Amendment implications. It was Paris' fortuitous good luck in this regard that Overstreet stopped at the gas station and he was not, therefore, required to stop Overstreet's vehicle. However, I would not characterize the encounter as consensual from Overstreet's point of view. Despite our many statements to the contrary, I do not think that any reasonable person, when approached by a police officer and questioned about his activities, would honestly feel free to refuse to answer or to leave. And even more to the point, how many people know that they have such a right? Could not refusing to cooperate be sufficient to arouse suspicion and warrant further investigation? *See Illinois v. Wardlow,* —— U.S. ——, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000) (acknowledging previous cases which have held that nervous, evasive behavior is a factor in determining reasonable suspicion, as is presence in a high crime area and unprovoked flight).

In a situation such as this, it truly seems that one is "damned if he does, damned if he doesn't." I would reverse the trial court's denial of Overstreet's motion to suppress.