STATE of Indiana, Appellant–Plaintiff,

v.

Stephen P. AUGUSTINE,
Appellee–Defendant.

No. 64A03–0507–CR–334.

Court of Appeals of Indiana.

Aug. 1, 2006.

Stephen R. Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

## OPINION

HOFFMAN, Senior Judge.

Plaintiff–Appellant State of Indiana appeals the trial court's grant of Defendant–Appellee Stephen P. Augustine's motion to suppress. We reverse.

The State presents one issue for our review, which we restate as: whether the trial court erred by granting Augustine's motion to suppress.

On July 16, 2004, a man called police on his cell phone to report the erratic driving of another driver at a particular location in Valparaiso, Indiana, and he gave police the license plate number of the vehicle. The police officer responding to the call was unable to locate the erratic driver on the roadway, but, using the license plate number, he obtained the address of the owner of the vehicle through BMV ("Bureau of Motor Vehicles") records. The officer drove to the address and found the vehicle in the driveway with the engine running and with Augustine sitting in the driver's seat. When the officer approached the

vehicle, Augustine rolled down the window and spoke with the officer. The officer noted the heavy odor of alcohol emanating from Augustine, as well as his inability to speak clearly. During this conversation, Augustine admitted drinking and driving. The officer then conducted field sobriety tests, which Augustine failed. In addition, Augustine's breath test at the police station registered .22%.

Based upon this incident, the State charged Augustine with operating a motor vehicle while intoxicated. Augustine filed a motion to suppress the evidence, which the trial court granted following a hearing. It is from this ruling that the State now appeals.

■■■ Initially, we note that Augustine has not filed an appellee's brief. When an appellee does not submit a brief, an appellant may prevail by making a prima facie case of error. *Gibson v. Hand,* 756 N.E.2d 544, 545 (Ind.Ct.App.2001). In this context, prima facie is defined as "at first sight, on first appearance, or on the face of it." *Id.* at 546. The prima facie error rule protects this court and relieves it from the burden of controverting arguments advanced for reversal, a duty that properly remains with counsel for the appellee. *Id.*

■■■ The State contends that the trial court erred by granting Augustine's motion to suppress the evidence obtained pursuant to his encounter with the police officer. Particularly, the State argues that Augustine's Fourth Amendment rights were not violated by the officer's investigation. The State has the burden of demonstrating that the measures it used to seize the information or evidence were constitutional. *State v. Davis,* 770 N.E.2d 338, 340 (Ind.Ct.App.2002). When appealing the grant of a motion to suppress, the State appeals from a negative judgment and must show the trial court's ruling was contrary to law. *State v. Mason,* 829 N.E.2d 1010, 1015 (Ind.Ct.App.2005). This Court will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that reached by the trial court. *Id.* We neither reweigh the evidence nor judge the credibility of the witnesses, and we consider only the evidence most favorable to the judgment. *Id.*

■■■ The Fourth Amendment to the United States Constitution guarantees the right to be secure against unreasonable search and seizure. *Sowell v. State,* 784 N.E.2d 980, 983 (Ind.Ct.App.2003). In order to determine whether the officer impinged upon Augustine's Fourth Amendment rights, we must first analyze what level of police investigation occurred. There are three levels of police investigation, two of which implicate the Fourth Amendment and one of which does not. *Overstreet v. State,* 724 N.E.2d 661, 663 (Ind.Ct.App.2000), *reh'g denied, trans. denied.* First, the Fourth Amendment requires that an arrest or detention that lasts for more than a short period of time must be justified by probable cause. *Id.* Second, pursuant to Fourth Amendment jurisprudence, the police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based upon specific and articulable facts, the officer has a reasonable suspicion that criminal activity has or is about to occur. *Id.* The third level of investigation occurs when a police officer makes a casual and brief inquiry of a citizen, which involves neither an arrest nor a stop. This is a consensual encounter in which the Fourth Amendment is not implicated. *Id.* Thus, we must determine whether the officer's investigation on Augustine's driveway was a consensual encounter between the two men, which, by its very nature, does not implicate the Fourth Amendment, or whether it was an investigatory stop that

must be justified by reasonable suspicion in order to pass Fourth Amendment muster.

■ As long as an individual remains free to leave, the encounter is consensual and there has been no violation of the individual's Fourth Amendment rights. *Shirley v. State,* 803 N.E.2d 251, 255 (Ind. Ct.App.2004). Factors to be considered in determining whether a reasonable person would believe he was not free to leave include: (1) the threatening presence of several officers, (2) the display of a weapon by an officer, (3) the physical touching of the person, or (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Id.*

■ In the instant case, when the officer arrived at Augustine's residence, he found Augustine sitting in the driver's seat of his vehicle on his driveway with the engine running. The officer approached the vehicle, and Augustine rolled down the window to speak to the officer. At that time, no other officers were present, there is no evidence that the officer on the scene displayed a weapon or touched Augustine, and there is no indication that the officer used any language or spoke in a tone of voice mandating compliance. At this point, the situation appeared to be a consensual encounter where a law enforcement officer was making a casual and brief inquiry of a citizen. Therefore, up to that point, the Fourth Amendment was not implicated.

■ However, once the officer began talking with Augustine, the encounter took on a different form. The officer immediately noticed a heavy odor of alcohol emanating from Augustine when Augustine rolled down the window, and, when Augustine began conversing with the officer, the officer observed that Augustine was having

difficulty speaking and was difficult to understand. This information caused the officer to suspect that Augustine was intoxicated. The consensual encounter evolved into an investigatory stop when the officer asked Augustine to exit the vehicle to submit to field sobriety tests. *See Shirley,* 803 N.E.2d at 255 (finding consensual encounter where officer observed defendant weaving on bicycle and asked defendant if he was okay and further finding that consensual encounter was converted into investigatory stop when officer requested defendant's identification after noticing strong odor of alcohol on defendant's breath, defendant's glassy eyes, slurred speech and sway).

■■ Thus, we must now analyze the officer's interaction with Augustine from the point at which it converted into an investigatory stop. In order to withstand constitutional scrutiny, an investigatory stop requires reasonable suspicion, based on specific and articulable facts, that criminal activity has or is about to occur. *Overstreet,* 724 N.E.2d at 663. Reasonable suspicion determinations are to be made by looking at the totality of the circumstances of each case to see whether the officer has a particularized and objective basis for suspecting legal wrongdoing. *Sellmer v. State,* 842 N.E.2d 358, 360 (Ind.2006).

Based upon the officer's observations of Augustine, the officer had reason to believe Augustine was intoxicated. Alternatively, the tip provided by the identified caller was sufficient to provide police with a basis to initiate the encounter with Augustine which then provided the officer with further information that caused him to initiate an investigatory stop. The United States Supreme Court has indicated that although a tip from an identified or known informant may not be sufficient to support a probable cause finding, such tips are sufficiently reliable to justify an inves-

tigatory *Terry* stop. *See Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (reiterating its approach established in *Adams v. Williams,* which held that an unverified tip from a known informant was sufficiently reliable to justify a *Terry* stop, although it might not have been reliable enough to establish probable cause); *Adams v. Williams,* 407 U.S. 143, 146–47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (holding that a tip from a known informant can be the basis of reasonable cause for police officer's investigatory stop). However, because the test is the totality of the circumstances, our inquiry does not end here.

■ Our courts have noted that there are two primary types of informants: professional informants and cooperative citizens, and the test for determining the reliability of each is different. *Richard v. State,* 820 N.E.2d 749, 753–54 (Ind.Ct. App.2005), *trans. denied,* 831 N.E.2d 741, *cert. denied,* — U.S. ——, 126 S.Ct. 1034, 163 L.Ed.2d 856 (2006). The cooperative citizens group of informants includes victims of crimes and persons who personally witness a crime who come forward with information out of the "spirit of good citizenship" and their desire to assist law enforcement. *Id.* at 754. They are usually one-time informants so that there is no basis from which to determine their reliability. *Id.* Although there may well be greater indicia of reliability in the report of the cooperative citizen, as distinguished from the professional informant, it is still the totality of the circumstances that controls when determining reasonable suspicion.

Another circumstance that is particularly relevant in this case is the immediacy of the threat to public safety. A report of an intoxicated driver, or, at the least, a reckless driver, operating a vehicle on public streets is an immediate threat.

In the instant case, the concerned citizen informant called police dispatch from his cell phone to report the erratic driving of another driver on public roads. The caller identified himself as Jeffrey Rucklos and indicated "the vehicle was all over the roadway and driving very badly." Tr. at 6. The citizen informant also gave the license plate number of the vehicle. Although we are dealing with a concerned citizen informant, we do not know whether the police could locate a man by the name of Jeffrey Rucklos in the Valparaiso area. Our review of the materials on appeal indicates that there was no attempt to do so. Therefore, we cannot comment on whether he could be charged in the event of a false report. However, we are unaware of any claim by Augustine that he was acquainted with the individual who reported the incident, and there is no evidence to suggest that this citizen informant concocted a false report or otherwise acted in a manner which might have placed his motive or credibility at issue.

■ Thus, under the totality of the circumstances, we conclude that there was reasonable suspicion for an investigatory stop in this case. We note that we reach this conclusion recognizing that the officer did not observe Augustine driving. However, the informant, who did witness Augustine driving erratically and endangering others on the roadway, identified himself to police when he made the call and provided police with specific information, such as the location and the license plate number of the vehicle Augustine was driving. The officer then obtained corroborative evidence of Augustine's physical condition during his encounter with Augustine before initiating the investigatory stop. *See e.g., State v. Smith,* 638 N.E.2d 1353 (Ind.Ct.App.1994), *reh'g denied* (reversing the trial court's grant of defendant's motion to suppress and

holding that although officer did not observe defendant's impaired driving, his response to police dispatch report, which was based on citizen reports and which identified color and make of vehicle, as well as license plate number, amounted to reasonable suspicion sufficient to validate the constitutionality of the stop); *see also State v. Springmier*, 559 N.E.2d 319 (Ind. Ct.App.1990) (reversing the trial court's grant of defendant's motion to suppress where police dispatch received call from concerned citizen about erratic driver and officer received information from dispatch, including description of vehicle and direction of travel, and stopped vehicle; stop held constitutional because information received by officer from dispatch provided officer with reasonable suspicion).[1] The trial court erred by granting Augustine's motion to suppress.

Reversed.

KIRSCH, C.J., and VAIDIK, J., concur.

---

1. We note that search and seizure violations under Article I, Section 11 of the Indiana Constitution are analyzed differently than under the U.S. Constitution. The State must show that, under the totality of the circumstances, the police behavior was reasonable. *Jackson v. State*, 785 N.E.2d 615, 618 (Ind.Ct. App.2003), *reh'g denied, trans. denied.* We note that in this case, under the totality of the circumstances, the officer's behavior was reasonable. Therefore, Indiana's constitutional provision does not change our result.