Jesse L. **PAYNE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 61A01–0512–CR–562.**

Court of Appeals of Indiana.

Oct. 11, 2006.

Transfer Denied Nov. 28, 2006.

Larry Crawford Thomas, Clinton, IN,
Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Jesse L. Payne (Payne), appeals the trial court's denial of his Motion to Suppress.

We affirm.

### ISSUE

Payne raises two issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court properly denied Payne's Motion to Suppress.

### FACTS AND PROCEDURAL HISTORY

On April 28, 2005, at approximately 12:40 a.m., the Bridgeton covered bridge in Parke County was on fire. Over the police radio, Parke County Sheriff Charles Bollinger (Sheriff Bollinger) asked his deputies to check other bridges in the area. Sheriff Bollinger and two other Deputies also discussed the whereabouts of Payne over the radio, without giving any details as to why Payne's whereabouts were important.

Reserve Deputy Mitchell Watts (Deputy Watts) was on duty and responding to Sheriff Bollinger's request when he was called to Montezuma on an unrelated incident. After completing the call in Montezuma, Deputy Watts headed toward Mansfield to check the status of the bridge there. Mansfield is a sparsely populated unincorporated town approximately five to seven miles from Bridgeton.

Upon reaching Mansfield, Deputy Watts drove over the covered bridge, turned around and drove back across the bridge. When Deputy Watts came back over the bridge, he noticed a person in front of a closed store approximately three hundred feet from the bridge. Deputy Watts drove to the individual, later identified as Payne, got out of his car, approached him, and noticed he was holding a wallet in one hand and a root beer from the vending machine behind him in the other hand. Deputy Watts asked Payne "how he was doing this morning." (Transcript p. 8). Payne responded that he was fine, but said Deputy Watts looked a little nervous. Deputy Watts informed him there was covered bridge fire. Deputy Watts then asked Payne for some identification. Payne handed Deputy Watts an I.D. and at the same time voluntarily handed Deputy Watts a receipt from a gas station in Coatesville.

Upon discovering Payne's identity, Deputy Watts recalled the prior inquiries over the radio as to Payne's whereabouts. Deputy Watts was unaware that Payne was suspected in the burning of another covered bridge. Nor did Deputy Watts know Payne's counselors had informed the Parke County Sheriff's Office that Payne "had heard voices telling him to burn bridges." (Tr. pp. 38, 46). All Deputy Watts knew was that three or four other officers in the department were looking for Payne.

Deputy Watts asked permission to pat him down for officer safety. Payne did not object. After patting him down, Deputy Watts asked him if he would consent to being handcuffed. Again, Payne did not object. Deputy Watts put Payne in handcuffs and walked him to his patrol car. On the way to the car, Payne volunteered that he had a bottle of gasoline in his car for a campfire. Deputy Watts radioed he was with Payne. Within five minutes Chief Deputy Edward McHargue (Deputy McHargue) arrived. Deputy McHargue removed Payne from Deputy Watt's car and took off his handcuffs. Deputy

McHargue put Payne in his patrol car, without handcuffs, and advised him he was not under arrest, but read him his *Miranda* rights. Deputy McHargue proceeded to "interview" Payne. (Tr. p. 48).

On May 12, 2005, the State filed an Information charging Payne with Count I, arson, a Class B felony, Ind.Code § 35–43–1–1(a)(3), and Count II, attempted arson, a Class B felony, I.C. §§ 35–43–1–1(a)(3), 35–41–5–1. On July 7, 2005, the State amended the Information adding Count III, arson, a Class B felony, I.C. § 35–43–1–1(b)(3), and Count IV, habitual offender enhancement, I.C. § 35–50–2–8. On August 18, 2005, Payne filed a Motion to Suppress. On September 23, 2005, the trial court held a hearing on the Motion. On October 14, 2005, the trial court denied Payne's Motion to Suppress.

Payne now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Payne argues the trial court improperly denied his Motion to Suppress evidence obtained as a result of his illegal custodial and arrest interrogations. Specifically, Payne contends that (1) he was stopped illegally because Deputy Watts did not have the requisite reasonable suspicion since the collective knowledge of the police department regarding Payne was not conveyed to Deputy Watts before he stopped Payne, and (2) upon handcuffing Payne the seizure rose to the level of an arrest requiring probable cause, which Deputy Watts also did not possess.

Our review of the denial of a motion to suppress is similar to other sufficiency matters. *Gonser v. State,* 843 N.E.2d 947, 949 (Ind.Ct.App.2006), *see also Ratliff v. State,* 753 N.E.2d 38, 41 (Ind.Ct.App.2001). The record must disclose substantial evidence of probative value that supports the trial court's decision. *Gonser,* 843 N.E.2d at 949. We do not reweigh the evidence,

and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* On appellate review, we will affirm the trial court's ruling on a motion to suppress if it is sustainable on any legal theory supported by the record, even if the trial court did not use that theory. *Id.*

Payne first argues his rights under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution were violated. Specifically, Payne claims Deputy Watts did not have the reasonable suspicion necessary to conduct an investigatory stop. The Fourth Amendment to the United States Constitution guarantees the right to be secure against unreasonable search and seizure. *State v. Augustine,* 851 N.E.2d 1022, 1025 (Ind.Ct.App.2006). There are three levels of police investigation, two of which implicate the Fourth Amendment and one of which does not. *Id.* (citing *Overstreet v. State,* 724 N.E.2d 661, 663 (Ind.Ct.App.2000), *reh'g denied*). First, the Fourth Amendment requires that an arrest or detention that lasts for more than a short period of time must be justified by probable cause. *Augustine,* 851 N.E.2d at 1025. Second, pursuant to Fourth Amendment jurisprudence, the police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based upon specific and articulable facts, the officer has a reasonable suspicion that criminal activity has or is about to occur. *Id.* The third level of investigation occurs when a police officer makes a casual and brief inquiry of a citizen, which involves neither an arrest nor a stop. This is a consensual encounter in which the Fourth Amendment is not implicated. *Id.* Thus, we must determine whether Deputy Watts' encounter with Payne was a consensual encounter, which, by its very nature, does not implicate the Fourth Amendment, or whether it was an

investigatory stop that must be justified by reasonable suspicion in order to pass Fourth Amendment muster.

██ As long as an individual remains free to leave, the encounter is consensual and there has been no violation of the individual's Fourth Amendment rights. *Id.* at 1026. Factors to be considered in determining whether a reasonable person would believe he was free to leave include: (1) the threatening presence of several officers, (2) the display of a weapon by an officer, (3) the physical touching of the person, or (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Id.*

██ In the instant case, when Deputy Watts first noticed Payne, Payne was holding his wallet in one hand and a root beer he purchased from a vending machine in front of a closed store in the other hand. Our review of the record indicates that upon approaching Payne, Deputy Watts was the only officer present, he did not display a weapon, nor did he touch Payne, or use language or a tone of voice which commanded compliance. *See id.* Deputy Watts merely engaged Payne in relaxed conversation. At this point, the situation appeared to be a consensual encounter where a law enforcement officer was making a casual and brief inquiry of a citizen. *Id.; see also Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) ("[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions."). Furthermore, our supreme court has held that "in the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." *Augustine,* 851 N.E.2d at 1025 (quoting *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County,* 542 U.S. 177, 185, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004), *reh'g denied* ).

██ Next, we must analyze Deputy Watts' interaction with Payne from the point at which his casual conversation with Deputy Watts converted into an investigatory stop. In order to withstand constitutional scrutiny, an investigatory stop requires reasonable suspicion, based on specific and articulable facts that criminal activity has or is about to occur. *Id.* (citing *Overstreet,* 724 N.E.2d at 663.). This concept of reasonable suspicion is not readily reduced to a neat set of legal rules. *Sanchez v. State,* 803 N.E.2d 215, 219–220 (Ind.Ct.App.2004), *trans. denied.* Rather, reasonable suspicion determinations are to be made by looking at the totality of the circumstances in each individual case to see whether the officer has a particularized and objective basis for suspecting legal wrongdoing. *Augustine,* 851 N.E.2d at 1026.

Payne claims Deputy Watts had no specific and articulable facts that he was linked to the burning bridge, but rather it was the collective knowledge of the sheriff's department that created a reasonable suspicion. The State, on the other hand, argues the collective knowledge of the department is enough to allow Deputy Watts to detain Payne. Regardless of the parties' argument on collective knowledge, we find that Deputy Watts had the requisite reasonable suspicion to detain Payne.

The record supports that Deputy Watts knew two things for certain when he approached Payne: the Bridgeton bridge was on fire, and Payne's whereabouts had been discussed over the radio after a bridge was discovered to be on fire. Even though Deputy Watts did not know with whom he was having a conversation when he approached Payne, he acted legally by asking for identification. *See Augustine,* 851 N.E.2d at 1025. Then, with no provocation other than a mere request for identification, Payne handed Deputy Watts his

driver's license, identifying himself as Payne, and a gas station receipt. The totality of the circumstances surrounding his encounter with Payne, supplemented by Deputy Watt's knowledge, meets the requisite reasonable suspicion to justify Deputy Watts' pat down and detention of Payne.

Next, Payne contends that the additional seizure—his being placed in handcuffs—rose to the level of arrest requiring probable cause rather than reasonable suspicion. In support of this contention, Payne directs our attention to *Loving v. State,* 647 N.E.2d 1123 (Ind.1995), and *Wright v. State,* 766 N.E.2d 1223 (Ind.Ct. App.2002). In *Loving,* the defendant was questioned by several police officers at the crime scene, placed in handcuffs, put in the back of a marked police car, and driven to the police station by uniformed officers. *Loving,* 647 N.E.2d at 1125. The supreme court found that "a reasonable person in the defendant's circumstances would not have believed himself to be free to leave but would instead have considered his freedom of movement to have been restrained to the degree associated with a formal arrest." *Id.* at 1125–26 (internal quotations omitted).

In *Wright,* a police officer approached the defendant's illegally parked car. *Wright,* 766 N.E.2d at 1230. After obtaining Wright's identity and asking him if there were any weapons or anything illegal inside the car; Wright became fidgety. *Id.* The officer asked Wright to stop fidgeting. *Id.* When Wright did not comply, the officer ordered Wright out of his car. *Id.* He did not exit the vehicle, so the officer helped him out and immediately handcuffed him before proceeding with a pat down search. *Id.* The officer specifically informed Wright he was not under arrest, but that the handcuffs were merely for officer safety. *Id.* We found the use of handcuffs in this situation would cause a reasonable person to feel he was not free to leave, and that his freedom of movement was restrained to the degree associated with a formal arrest. *Id.* (citing *Loving,* 647 N.E.2d at 1125–26).

On the other hand, the State points to two instances supporting investigative detentions in which citizens have been handcuffed, and still the intrusion did not warrant an arrest. First, in *Crabtree v. State,* 762 N.E.2d 241 (Ind.Ct.App.2002), the defendant, Crabtree, failed to comply with an officer's orders and was handcuffed as a result. *Id.* at 246. Still, because the handcuffing was coupled with reasonable suspicion, we found the officer's interaction with Crabtree to be an investigatory stop that implicated *Terry* Fourth Amendment protections; thus, the admission of the evidence seized pursuant to the stop was not error because the Officer had reasonable suspicion that criminal activity had occurred. *Id.* at 247. Also, in *Johnson v. State,* 710 N.E.2d 925 (Ind.Ct.App.1999), we found that handcuffing a person apprehended because he fit the description of a suspect who fled from the police was a proper investigative detention based on the reasonable suspicion derived from the totality of the circumstances. *Id.* at 927–28.

Based on the totality of the circumstances, we find Deputy Watts properly detained Payne until another officer with more information could arrive at the scene. Although Payne notes in his brief that Deputy Watts testified Payne was not free to leave, the record indicates Deputy Watts never communicated to Payne he was not free to leave. And, "a police officer's 'unarticulated plan has no bearing on the question' of custody." *Loving,* 647 N.E.2d at 1125 (quoting *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). Rather, the test is how a reasonable person in the suspect's

shoes would understand the situation. *Loving*, 647 N.E.2d at 1125. Deputy Watts sought permission from Payne to place him in handcuffs, indicating Payne was not forcibly restrained against his will. As well, Payne was detained in handcuffs for no more than five minutes. Our supreme court has held that "in assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *Mitchell v. State*, 745 N.E.2d 775, 782 (Ind.2001) (quoting *Unite States v. Sharpe*, 470 U.S. 675, 686–87, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985)). Thus, based on Deputy Watts' receiving permission from Payne to be handcuffed and the brevity of Payne's detention in handcuffs, we find Deputy Watts' detention of Payne did not rise to the level of an arrest, but was rather an investigatory detention in line with *Crabtree* and *Johnson*.

## CONCLUSION

Based on the foregoing, we conclude the trial court did not abuse its discretion by denying Payne's Motion to Suppress.

Affirmed.

BAILEY, J., and MAY, J., concur.