**STATE of Indiana, Appellant–Plaintiff,**

v.

**Stephen ALTER, Appellee–Defendant.**

No. 85A04–1101–CR–44.

Court of Appeals of Indiana.

Aug. 31, 2011.

Transfer Denied Oct. 31, 2011.

Gregory F. Zoeller, Attorney General of Indiana, Cynthia L. Ploughe, Deputy At-

torney General, Indianapolis, IN, Attorneys for Appellant.

Craig Persinger, Marion, IN, Attorney for Appellee.

## OPINION

BROWN, Judge.

The State of Indiana appeals the trial court's grant of a motion to suppress filed by Stephen Alter. The State raises one issue, which we revise and restate as whether the trial court erred in granting the motion to suppress. We affirm.

The relevant facts follow. On May 22, 2010, Indiana Department of Natural Resources Conservation Officer John Neargardner and Conservation Officer Levi Clark were "on boat patrol" on the Mississinewa River in Wabash County, Indiana. Transcript at 6. Officer Neargardner was in uniform and his sidearm was visible.[1] The officers were "checking fishermen in the area that were fishing from the bank." *Id.*

The officers observed Alter, who was with a juvenile and another female, on the west bank of the river engaged in the act of fishing. The officers proceeded towards Alter in their boat with the intent to "check for their fishing licenses ... and make sure they were in compliance with State law regarding bag limits and size limits with fish." *Id.* at 7. As the officers traveled towards Alter's location, Officer Neargardner observed Alter "pick up something" and place it in his bag. *Id.* The bag was a black "duffel bag" and "wasn't too terribly big in size." *Id.*

The officers pulled their boat to the edge of the riverbank, Officer Neargardner exited the boat and asked for Alter's fishing license, which Alter produced, and Officer Neargardner determined that the license was valid. While Officer Neargardner was still in possession of Alter's fishing license, he asked Alter "do you have anything in your bag?" *Id.* at 9. Alter stated that he had fishing gear in the bag. Officer Neargardner then asked Alter "if he would open his bag for [him]," and Alter opened the bag and pulled out a bag of chips and another small bag.

Officer Neargardner noticed a black bag "down in the bottom of that initial bag." *Id.* at 10. The smaller bag was approximately twelve inches long, six or seven inches wide, and three or four inches high. Officer Neargardner asked what was inside the smaller bag, and Alter stated "fishing gear." *Id.* at 13. At that point Officer Neargardner asked Alter to open the bag, and Alter "inquired as to why" and "said it's just fishing gear." *Id.* Officer Neargardner believed that Alter was attempting to conceal something because "as cooperative as he had been up to that point" he "became rather hesitant." *Id.* Officer Neargardner had a "hunch" that Alter had marijuana in the smaller bag. *See id.* at 13, 20. Officer Neargardner then told Alter to give him whatever he had "that's illegal in the bag," and Alter asked "so what may that be[?]" *Id.* at 20. Officer Neargardner then told Alter "give me your marijuana." *Id.* Alter then pulled out a jar, which contained a green plant material which field tested positive for marijuana, from the smaller bag. Alter was placed under arrest, the bag and its contents were processed, and some blue and white pills were discovered in the bag.

On May 24, 2010, the State charged Alter with possession of a controlled substance as a class D felony and possession of marijuana as a class D felony. On June 23, 2010, Alter filed a motion to suppress arguing that "the demand that [he] open

---

1. The transcript does not reveal whether Officer Clark was in uniform or had a sidearm.

his duffel bag was an unreasonable search under the search and seizure provisions of the United States and Indiana Constitutions." Appellant's Appendix at 16. After a hearing, the trial court granted Alter's motion.

The issue is whether the trial court erred when it granted Alter's motion to suppress. When appealing the trial court's grant of a motion to suppress, the State appeals from a negative judgment and must show that the ruling was contrary to law. *State v. Augustine*, 851 N.E.2d 1022, 1025 (Ind.Ct.App.2006). We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that reached by the trial court. *Id.* We neither reweigh the evidence nor judge the credibility of the witnesses, and we consider only the evidence most favorable to the judgment. *Id.*

The State argues that the actions of Officer Neargardner did not constitute a search under the Fourth Amendment or the Indiana Constitution, and that "[n]o law prohibits the simple, non-intrusive order uttered by the officer here." Appellant's Brief at 4. With respect to the Fourth Amendment, the State asserts that Officer Neargardner was authorized to assure compliance with fishing laws, that the officer "observed suspicious behavior" when he saw Alter place something in a bag, that the officer's "suspicion was not allayed even after [Alter] opened the duffel bag," that the officer noticed Alter's "air of cooperation ... ceased" when asked about the smaller bag, and that "[t]he entirety of the officer's verbal encounter with [Alter] was properly within constitutional parameters." *Id.* at 5–6. The State further argues that "the simple utterance instructing a person to hand over any contraband" is not "a search or seizure" and that "[t]he utterance does not 'uncover' anything; nei-

ther does it open any container." *Id.* at 7–8. With respect to the Indiana Constitution, the State asserts that "there was no search here," that Officer Neargardner's "investigation was very limited in scope and did not intrude unnecessarily into [Alter's] activities," and that the officer "needed to check the small black bag to conduct his patrolling and investigation into [Alter's] compliance with fishing laws." *Id.* at 10–11.

Alter argues that the "encounter was plainly a 'seizure' under the Fourth Amendment" and that "[t]wo uniformed officers, at least one of whom was armed, demanding that a citizen 'give [him] the marijuana,' would certainly suffice to cause a reasonable person to believe that he was not free to leave the officer's presence." Appellee's Brief at 4–5. Alter further argues that "[t]he seizure of Alter by the conservation officers effected a temporary detention," that "[o]nce Alter produced the valid license, [Officer] Neargardner ha[d] no reason to continue to question Alter," and that "[i]nstead, based upon a pure 'hunch' and absent any articulable facts, Officer Neargardner proceeded to turn his questioning of Alter into a drug investigation." *Id.* at 5.

The Fourth Amendment to the United States Constitution guarantees the right to be secure against unreasonable search and seizure. *Augustine*, 851 N.E.2d at 1025. In order to determine whether the officer impinged upon Alter's Fourth Amendment rights, we must first determine what level of investigation occurred. *See id.* There are three levels of investigation, two of which implicate the Fourth Amendment and one of which does not. *Overstreet v. State*, 724 N.E.2d 661, 663 (Ind.Ct.App. 2000), *reh'g denied, trans. denied.* First, the Fourth Amendment requires that an arrest or detention that lasts for more than a short period of time must be justi-

fied by probable cause. *Id.* Second, pursuant to Fourth Amendment jurisprudence, the police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based upon specific and articulable facts, the officer has a reasonable suspicion that criminal activity has occurred or is about to occur. *Id.* The third level of investigation happens when a police officer makes a casual and brief inquiry of a citizen, which involves neither an arrest nor a stop. *Id.* This is a consensual encounter in which the Fourth Amendment is not implicated. *Id.*

As long as an individual remains free to leave, the encounter is consensual and there has been no violation of the individual's Fourth Amendment rights. *Shirley v. State,* 803 N.E.2d 251, 255 (Ind.Ct.App. 2004). Factors to be considered in determining whether a reasonable person would believe he was not free to leave include: (1) the threatening presence of several officers, (2) the display of a weapon by an officer, (3) the physical touching of the person, or (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Id.* In determining whether a contact between a citizen and a police officer is a stop, the crucial consideration is whether the citizen was under a reasonable impression that he was not free to leave the officer's presence. *State v. Calmes,* 894 N.E.2d 199, 205 (Ind. Ct.App.2008) (citations omitted). "The test for whether such a reasonable impression existed is what a reasonable person, innocent of any crime, would have thought had he been in the citizen's shoes." *Id.*

█ Here, the record reveals that two conservation officers approached Alter in their flat bottom boat. Officer Clark, who was operating the boat, pulled up to the edge of the riverbank, and Officer Neargardner exited the boat and secured the boat to a tree, and then both officers approached Alter, the juvenile, and the other female and asked for their fishing license. The record shows that at least Officer Neargardner was in uniform and that his sidearm was visible. Further, after Alter produced his fishing license and Officer Neargardner had determined that the license was valid, Officer Neargardner retained possession of Alter's fishing license while he asked Alter about the contents of the duffel bag. After he noticed the smaller bag inside the larger duffel bag, Officer Neargardner pressed Alter regarding its contents, first by asking what was inside the bag, then stating to give him whatever was illegal in the bag, and finally ordering Alter to hand over his marijuana. The officers did not merely request and examine Alter's fishing license; rather, the officers retained Alter's license, proceeded to request to see the inside and contents of Alter's larger duffel bag and then the smaller bag, and then told Alter to give them whatever was illegal in the bag and the marijuana.

Based upon our review of the record, the circumstances presented lead us to agree with the trial court that a reasonable person in Alter's position would not feel free to leave or resist Officer Neargardner's directives. *See Calmes,* 894 N.E.2d at 205 (concluding that a reasonable person in the defendant's position would not feel free simply to terminate the encounter and walk away); *see also Finger v. State,* 799 N.E.2d 528, 533 (Ind.2003) (noting that "a reasonable person in [the defendant's] position would not feel free to leave after [the officer] retained his identification" and holding that the defendant was "detained for purposes of the Fourth Amendment" where a police officer asked for and received the driver's license of the defendant and did not return the license or say that he was free to leave while the officer continued to converse with the defendant).

Alter was detained for purposes of the Fourth Amendment.

 As a result, the officers needed reasonable suspicion that criminal activity had occurred or was about to occur to detain Alter briefly for investigative purposes. *See Overstreet,* 724 N.E.2d at 663; *see also Payne v. State,* 854 N.E.2d 1199, 1202 (Ind.Ct.App.2006) (noting that "an officer may briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion that criminal activity has [occurred] or is about to occur"), *trans. denied.* Reasonable suspicion exists where the facts known to the detaining officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Campos v. State,* 885 N.E.2d 590, 597 (Ind.2008). Reasonable suspicion to justify an investigative stop must be based on specific and articulable facts known to the officer at the time of the stop that lead the officer to believe that "criminal activity may be afoot." *Finger,* 799 N.E.2d at 533 (citing *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "Reasonable suspicion requires more than mere hunches or unparticularized suspicions." *Id.* at 534 (citing *Terry,* 392 U.S. at 27, 88 S.Ct. 1868).

To the extent the State asserts that the officers were able to point to specific facts giving rise to reasonable suspicion of criminal activity, we disagree. When asked at the suppression hearing if he had any indication that Alter had marijuana or whether that was a "stab in the dark," Officer Neargardner testified: "you would just say a, a gut feeling that an officer gets, you know, a hunch, ... I can't explain it." *Id.* Officer Neargardner further testified on cross-examination that when initially approaching Alter in the boat he observed Alter possibly place something in "the larger duffel bag" and not in the smaller bag, that he inspected the larger duffel bag, that he never saw any contraband, that at some point in Officer Neargardner's mind the investigation "ceased to be a conservation investigation ... for undersize fish or things ... of that sort" and he "suspected drugs," and that his reaction when Alter became "rather hesitant" and not "voluntarily reveal[ing] the contents" in the smaller bag was that Alter "was possibly hiding drugs in there." *Id.* at 17–18. Reasonable suspicion requires more than mere hunches or unparticularized suspicions, and an officer must be able to point to specific facts giving rise to reasonable suspicion of criminal activity. *Finger,* 799 N.E.2d at 533. Based upon the testimony presented at the suppression hearing, we conclude that the officers lacked reasonable suspicion to further detain Alter for investigatory purposes under the Fourth Amendment at the time Officer Neargardner directed Alter to open the smaller bag and to give him anything illegal or give him the marijuana. The trial court did not err when it granted Alter's motion to suppress.[2] *See State v. Rager,* 883 N.E.2d 136, 140 (Ind.Ct.App.2008) (concluding that police did not have an objectively justifiable reason to stop the defendant and therefore affirming the trial court's grant of the defendant's motion to suppress); *see also Segar v. State,* 937 N.E.2d 917, 923 (Ind.Ct.App.2010) (concluding that an investigatory stop and de-

---

2. Because we conclude there was no reasonable suspicion to support Alter's detainment when the officers directed him to open and give him the contents of the smaller bag based

on the Fourth Amendment to the United States Constitution, we need not address the State's arguments related to the Indiana Constitution.

tention of the defendant were not supported by reasonable suspicion).

To the extent the State asserts that Ind.Code § 14–22–39–3 permits conservation officers to conduct investigations to protect Indiana's fish and wildlife and that Officer Neargardner was permitted to ask for any contraband in the bag under the statute, we observe that Ind.Code § 14–22–39–3 provides in part:

The director and conservation officers may:

(1) search a boat, a conveyance, a vehicle, an automobile, a fish box, a fish basket, a game bag, a game coat, or other receptacle in which game may be carried; and

(2) enter into or upon private or public property for the purposes of subdivision (1) or for the purpose of patrolling or investigating;

if the director or conservation officer has good reason to believe that the director or conservation officer will secure evidence of a violation of this article or a law for the propagation or protection of fish, frogs, mussels, game, furbearing mammals, or birds.

This court has previously addressed a prior version of this statute, Ind.Code § 14–2–9–1 (subsequently amended by Pub.L. No. 1–1995, § 15 (eff. July 1, 1995)), and held:

Although we have not addressed the question of the "good reason to believe" standard specified in Ind.Code 14–2–9–1, we believe that standard to be suspect. Conservation officers who, in their role as a government agent, rely upon that standard as something less than probable cause as defined in a 4th Amendment context, face a high probability of putting their investigation in harm's way.

*Richard v. State,* 482 N.E.2d 282, 287 (Ind. Ct.App.1985). Regardless of the language of Ind.Code § 14–22–39–3, the conservation officers were not permitted to detain or seize Alter in violation of the Fourth Amendment to the United States Constitution.

For the foregoing reasons, we affirm the trial court's grant of Alter's motion to suppress.

Affirmed.

BAKER, J., and KIRSCH, J., concur.