**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**GREGORY T. LAUER**
Lauer and Lauer
Martinsville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana



FILED
Oct 02 2012, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LORA L. KARR, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 55A01-1112-CR-591 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

INTERLOCUTORY APPEAL FROM THE MORGAN SUPERIOR COURT
The Honorable G. Thomas Gray, Judge
Cause No. 55D01-1102-CM-217

**October 2, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Lora L. Karr appeals from the trial court's denial of her pretrial motion to suppress, contending that certain evidence was obtained as the result of an unconstitutional seizure. We affirm.

**FACTS AND PROCEDURAL HISTORY**

On February 25, 2011, Mooresville Police Officer Benjamin Goodin received a dispatch regarding a Maroon GMC Sonoma with a license plate numbered 1283 driving erratically Southbound on State Road 67. The civilian who placed the initial 911 call reported a few moments later that the vehicle was driving on the shoulder. Officer Goodin located the Sonoma in question by instructing the 911 caller, who was following it, to activate her hazard lights.

Officer Goodin pulled in behind the Sonoma and followed it for approximately one quarter mile but did not witness any traffic violations or other reasons to pull it over before it turned South on Interurban Lane. Interurban Lane is a gravel drive that leads back to two or three homes, and the Sonoma parked in the driveway of one of them with its license plate facing the garage door. Officer Goodin, who never activated his lights or siren, parked in a large open gravel area to the Northwest of the driveway, "off to the side out of the way essentially" and approximately eight to ten steps away from the Sonoma. Tr. p. 7. When Karr, the driver of the Sonoma, emerged, Officer Goodin approached "and just asked her how things were going just to strike up a conversation." Tr. p. 7. Upon first contact, Officer Goodin could smell the odor of alcoholic beverages on Karr's breath and noticed that her speech was slurred, her eyes were bloodshot, her eyelids were

2

"droopy," and she was swaying while standing still. Tr. p. 9. Officer Goodin continued his investigation of Karr.

On February 28, 2011, the State charged Karr with Class A misdemeanor operating a vehicle while intoxicated endangering a person[1] and Class C misdemeanor operating a vehicle with an alcohol concentration equivalent of 0.08 or greater.[2] On September 26, 2011, Karr filed a motion to suppress any evidence gathered following the encounter between Officer Goodin and herself. On October 20, 2011, the trial court denied Karr's motion to suppress. On November 22, 2011, the trial court granted Karr's request for certification for interlocutory appeal. On February 2, 2012, this court accepted jurisdiction.

## DISCUSSION AND DECISION

### Whether the Trial Court Abused its Discretion in Denying Karr's Motion to Suppress

We review the denial of a motion to suppress "in a manner similar to other sufficiency matters. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the ruling. Unlike typical sufficiency reviews, however, we will consider not only the evidence favorable to the ruling but also the uncontested evidence favorable to the defendant." *Gunn v. State*, 956 N.E.2d 136, 138 (Ind. Ct. App. 2011).

---

[1] Ind. Code § 9-30-5-2 (2010).

[2] Ind. Code § 9-30-5-1(a) (2010).

## A.  Fourth Amendment

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767 (1966).  "In *Wolf* [*v. People of State of Colorado*, 338 U.S. 25, 27 (1949) (overruled on other grounds by *Mapp v. Ohio*, 367 U.S. 643 (1961)] we recognized '(t)he security of one's privacy against arbitrary intrusion by the police' as being 'at the core of the Fourth Amendment' and 'basic to a free society.'" *Id.*

> [T]here are three levels of police investigation, two which implicate the Fourth Amendment and one which does not.  First, the Fourth Amendment requires that an arrest or detention for more than a short period be justified by probable cause.  *Woods v. State*, 547 N.E.2d 772, 778 (Ind. 1989).  Probable cause to arrest exists where the facts and circumstances within the knowledge of the officers are sufficient to warrant a belief by a person of reasonable caution that an offense has been committed and that the person to be arrested has committed it.  *Brinegar v. United States*, 338 U.S. 160, 175-76, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949).  Second, it is well-settled Fourth Amendment jurisprudence that police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).  Accordingly, limited investigatory stops and seizures on the street involving a brief question or two and a possible frisk for weapons can be justified by mere reasonable suspicion.  *Woods*, 547 N.E.2d at 778.  Finally, the third level of

4

investigation occurs when a law enforcement officer makes a casual and brief inquiry of a citizen which involves neither an arrest nor a stop. In this type of "consensual encounter" no Fourth Amendment interest is implicated. *See Molino v. State*, 546 N.E.2d 1216, 1218 (Ind. 1989) (citing *Florida v. Rodriguez*, 469 U.S. 1, 5-6, 105 S. Ct. 308, 83 L. Ed. 2d 165 (1984)).

*Overstreet v. State*, 724 N.E.2d 661, 663 (Ind. Ct. App. 2000), *trans. denied*.

Karr does not dispute that the interaction between Officer Goodin and herself began as a consensual encounter. Karr, however, citing to another panel of this court's decision in *State v. Atkins*, 834 N.E.2d 1028 (Ind. Ct. App. 2005), *trans. denied*, contends that Officer Goodin had no right to initiate even a consensual encounter on her private property without probable cause. The holding in *Atkins*, however, has no applicability to consensual encounters. At most, *Atkins* stands for the proposition that police must have probable cause to perform a *Terry* stop of a person on his or her private property. *Id*. at 1032. Karr's reliance on *Atkins* is unavailing. The trial court did not err in rejecting Karr's Fourth Amendment argument.[3]

## B. Article I, Section 11

---

[3] If we had been required to address the nature of the initial encounter here, we would have concluded that it was consensual. The facts of this case are very similar to those addressed in *State v. Augustine*, 851 N.E.2d 1022 (Ind. Ct. App. 2006). In that case, a police officer received a report of erratic driving, and, although not witnessing any erratic driving personally, was able to locate Augustine's residence from the license plate number given by the tipster. *Id*. at 1024. When the officer arrived at the address, he found a vehicle in the driveway with the motor running and Augustine in the driver's seat. *Id*. When the officer approached, Augustine rolled the window down and spoke with the officer, who noticed the heavy odor of alcoholic beverage and Augustine's inability to speak clearly. *Id*. at 1024-25. We held that the encounter to that point was consensual, noting that "[a]t that time, no other officers were present, there is no evidence that the officer on the scene displayed a weapon or touched Augustine, and there is no indication that the officer used any language or spoke in a tone of voice mandating compliance." *Id*. at 1026. The facts of *Augustine* and this case are similar enough that we would see no reason to depart from its holding or analysis on this point.

Article I, Section 11, of the Indiana Constitution provides that

[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

The Indiana Supreme Court has noted that

[w]hile almost identical in wording to the federal Fourth Amendment, the Indiana Constitution's Search and Seizure clause is given an independent interpretation and application. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001); *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind. 1999); *Moran v. State*, 644 N.E.2d 536, 540 (Ind. 1994). To determine whether a search or seizure violates the Indiana Constitution, courts must evaluate the "reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005) (citing *Moran*, 644 N.E.2d at 539). "We believe that the totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Id*. at 360. In *Litchfield*, we summarized this evaluation as follows:

> In sum, although we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizens' ordinary activities, and 3) the extent of law enforcement needs.

*Id*. at 361.

*Myers v. State*, 839 N.E.2d 1146, 1153 (Ind. 2005).

The degree of concern that Karr might have been driving impaired was reasonably high. A concerned citizen reported erratic driving and then that Karr's Sonoma was

6

driving on the shoulder a few moments later. Although Officer Goodin did not personally witness any erratic driving by Karr, he only followed her for approximately one quarter mile before she stopped. Moreover, nothing occurred that would have dispelled any concern generated by the citizen's reports of erratic driving.

Officer Goodin's intrusion on Karr's activities was minimal. As previously mentioned, Karr does not dispute that the encounter was initially consensual. Officer Goodin parked in such a way as not to block Karr's vehicle, activated neither his lights nor siren, never pulled his weapon, never touched Karr, and never ordered Karr to stop. There is no indication that Officer Goodin's tone or manner was intimidating. It seems that Officer Goodin simply walked up to Karr and began conversing with her in her driveway, at which point he noticed signs of possible intoxication.

The needs of law enforcement were reasonably high, even though Karr was no longer on the road when Officer Goodin approached her. Indiana has an obvious interest in the prevention and detection of and punishment for impaired driving. This Court has previously recognized that "'the threat to public safety posed by a person driving under the influence of alcohol is as great as the threat posed by a person illegally concealing a gun.'" *State v. McCaa*, 963 N.E.2d 24, 34 (Ind. Ct. App. 2012) (quoting *State v. Superior Court In & For Cochise Cnty.*, 149 Ariz. 269, 718 P.2d 171, 176 (1986)), *trans. denied*. In any event, had Officer Goodin simply left, Karr could have reentered her vehicle and continued to drive, possibly endangering the public. We have little trouble concluding that, in light of the reasonably high degree of suspicion, low degree of intrusion, and

reasonably high degree of law enforcement need, Officer Goodin's actions were reasonable pursuant to Article I, Section 11. The trial court did not err in concluding that Officer Goodin's actions did not violate the Indiana Constitution.

We affirm the judgment of the trial court.

ROBB, C.J., and BAKER, J., concur.